**THE RUDD LAW FIRM**
Christopher L. Rudd (SBN 130713)
E-mail: clrudd@ruddlawpc.com
4650 Sepulveda Boulevard, Suite 205
Sherman Oaks, CA 91403
Tel.: 310.663.0705
Fax: 310.359.0258

*Attorneys for Plaintiffs*

[Additional counsel appear on signature page]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY CASTILLO, individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>TARGET CORP.,<br><br>　　　　　　　Defendant. | **CASE NO.　　2:20-cv-9367**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**1. UNJUST ENRICHMENT**<br>**2. VIOLATION OF CALIFORNIA LEGAL REMEDIES ACT, Cal. Bus. & Prof. Code § 1750** *et seq.*<br>**3. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code § 17200** *et seq.*<br>**4. VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, Cal. Bus. & Prof. Code § 17500,** *et seq.*<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Shirley Castillo ("Plaintiff") brings this Class Action Complaint against Defendant Target Corp. (hereinafter "Defendant" or "Target"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys:

## JURISDICTION AND VENUE

1.　　This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) the Plaintiff is a member of the putative classes which consist

of at least 100 members and Plaintiff and Defendant are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the exceptions under 1332 apply to this claim.

2.      Jurisdiction and venue are properly vested in this Court because a substantial portion of the acts, events, and/or failure to act giving rise to the claims alleged herein occurred in this judicial district. Additionally, Defendant has substantial business contacts with the State of California, or otherwise avails itself of the markets within California, through promotion, sale, marketing and distribution of the products at issue in California, to render the exercise of jurisdiction by this Court proper and necessary. Furthermore, Defendant can be brought before this Court pursuant to California's long-arm jurisdictional statute.

3.      Venue is proper in this Court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within this District and Defendant is subject to personal jurisdiction in this District.

## NATURE OF THE CASE

4.      Target is one of the largest retailers in the United States. Target owns and operates brick-and-mortar retail stores throughout the United States. Target markets, advertises, and sells various products, including, but not limited to pain reliever and fever reducers, to consumers in its brick-and-mortar stores.

5.      Target distributes its own brand of infants' pain reliever and fever reducer—Dye-Free Infants' Acetaminophen ("Infants' Products")—and children's pain reliever and fever reducer—Children's Acetaminophen ("Children's Products")—two well-known brand-name Over The Counter ("OTC") medications. The Infants' Products and Children's Products are collectively hereinafter referred to as the "Products."

6.      Acetaminophen, the active ingredient in the Products, can be dangerous, and perhaps even fatal, if taken in large doses. The potential risks associated with acetaminophen overdose terrifies parents and causes them to be extra careful when

1  buying medicine for their children. Target exploits this fear by misleading consumers.

2        7.    It is the manner in which Target markets, labels, and sells the Products in

3  its brick-and-mortar stores that forms the underlying basis for this action.

4        8.    Target's advertisements, marketing representations, and labeling of the

5  Products in its brick-and-mortar stores are misleading, untrue, and likely to deceive

6  reasonable consumers. Target purposely packages Infants' Products with distinctive

7  lettering of the word "infants" on the product's front-label, while packaging Children's

8  Products with distinctive lettering of the word "Children's" on the product's front-label.

9  Furthermore, through Target's packaging and labeling of the Products, Target attempts

10  to deceive reasonable consumers into believing that Infants' Products and Children's

11  Products are different, when Target knows that the two products are exactly the same

12  in terms of their active ingredient (acetaminophen) and dosage (160 mg/5 mL).

13  Accordingly, Target distributes, markets, and sells the Products in a manner which

14  deceives reasonable consumers into thinking that infants cannot safely take Children's

15  Products.

16        9.    Furthermore, despite the fact that the Products contain the same exact

17  amount of acetaminophen in the same dosage amounts, Target markets and sells Infants'

18  Products to consumers, such as Plaintiff, at a substantially higher price than Children's

19  Products. In stores, the Infants' Products cost approximately three times as much per

20  ounce than Children's Products for the same amount of medicine.

21       10.    No reasonable consumer would pay approximately three times more for

22  Infants' Products, as compared to Children's Products, unless he or she was deceived

23  into thinking that infants cannot safely take the Children's Products.

24       11.    Also, the product labeling on the Infants' Product is misleading, because

25  the stated age range of 2-3 years does not match the FDA classification for infants. The

26  FDA classification for infants is as follows: infant = 1 month to 2 years. By marketing

27  this "Infant" product with an age range of 2-3 years, the Infants' Products should

28  properly be labeled as "Children's" products, as the FDA classification for children is

2 to 12 years, covering the entire age range of 2-3 years that is on the Infant Products' label.

## **PARTIES**

12.     At all relevant times, Plaintiff Castillo, has resided in Los Angeles County, California, and purchased the Infants' Products near her residence. Plaintiff has been purchasing Infants' Products for a number of years, and first purchased the Infants' Products in this District for his infant children.

13.     Target is a corporation organized and existing under the laws of the State of Minnesota with headquarters in Minneapolis, Minnesota.

14.     During her interactions with the Infants' Products, Plaintiff saw and relied upon the Infants' Products packaging and labeling.

15.     Plaintiff Castillo purchased the Infants' Products because she believed that Infants' Products were specifically formulated for infants based on the marketing and labeling of the Infants' Products. Plaintiff believed that the Infants' Products were different than the Children's Products. If Plaintiff knew that the Infants' Products were no different than the Children's Products, she would not have purchased the Infants' Products or paid a price premium for the Infants' Products.

16.     Had Target not made the false, misleading, and deceptive representation that the Infants' Products were formulated and designed for "Infants," nor omitted the fact that the Infants' Products were nothing more than the Children's Products with the word "Infants" prominently displayed, Plaintiff would not have been willing to pay the premium for the Infants' Products, or to purchase the Infants' Products at all. Plaintiff purchased and paid substantially more for the Infants' Products than she would have if she had known the truth about the Infants' Products. The Infants' Products that Plaintiff received were worth less than the Infants' Products for which they paid. Plaintiff was injured in fact and lost money as a result of Target's fraudulent conduct.

17.     Plaintiff would like to purchase "Infants" products from Target in the future and regularly visit retail locations where such products are sold. If Plaintiff knew

1  that the Infants' Products' labels were truthful and not misleading, she would purchase

2  the Infants' Products in the future.

3      18.    At present, however, Plaintiff cannot purchase the Infants' Products or in

4  good faith provide them to young children or loved ones because they remain unsure as

5  to whether the labeling of the Products is, and will be, truthful and non-misleading. If

6  the Infants' Products were in fact different from the Children's Products, or if it were

7  disclosed that the Infants' Products were the same as the Children's Products, Plaintiff

8  would purchase the Products in the future, and they would be willing to pay a price

9  premium if they were in fact specially formulated for infants.

10                              **FACTUAL ALLEGATIONS**

11     19.    Target distributes two different pediatric OTC painkillers—Infants'

12  Products and Children's Products.

13     20.    As of October 12, 2020, Target sold the Infants' Product for $9.39 as

14  compared to a sale price of $3.29 for the Children's Product.

15     21.    Prior to the acts giving rise to this Complaint, liquid acetaminophen

16  marketed for "infants" was only available in 80 mg/0.8 mL or 80 mg/mL concentrations,

17  while liquid acetaminophen marketed for "children" was only available in 160 mg/5

18  mL concentrations.

19     22.    The difference in concentrations caused some consumers to accidentally

20  provide the wrong dosage of medicine to their children, causing them to overdose and,

21  in many cases, suffer significant bodily harm and even death.

22     23.    Between 2000 and 2009, the U.S. Food and Drug Administration (FDA)

23  received reports of twenty (20) children dying from acetaminophen toxicity, and at least

24  three (3) deaths were tied to mix-ups involving the two pediatric medicines.

25     24.    On December 22, 2011, the FDA informed the public that liquid

26  acetaminophen marketed for infants would now only be available in 160 mg/5 mL

27  concentration in order to prevent confusion and reduce the risk of accidental

28  acetaminophen overdoses.

CLASS ACTION COMPLAINT

25.    Since then, the only differences in liquid acetaminophen marketed for infants versus children have been the price and dosing instrument included with the product (i.e. Defendant's Infants' Products come with a syringe while the Children's Products come with a plastic cup).

26.    Both of the Products contain the same 160 milligram concentration of acetaminophen, are interchangeable, and are therefore suitable for infants and children, adjusting the dosage based only on the weight and age of the child.

27.    Defendant has been engaging in the unfair, unlawful, deceptive, and fraudulent practice of manufacturing, marketing and selling the same product as if it were two unique medicines, such that parents and caregivers mistakenly believe that they cannot purchase the significantly cheaper Children's Products for an infant.

28.    Defendant misleads consumers by using deceptive marketing techniques that obscure critical facts from consumers nationwide -- namely that infants can safely take Children's Products and that the Infants' and Children's Products are essentially the same.

29.    Defendant deceives consumers so that they will buy the deceptively-labeled Infants' Products for infants, which cost significantly more than the Children's Products, even though the Products actually contain the same amount of acetaminophen in the same dosage amounts.

30.    In the pharmaceutical industry, there are various conventions applied in sub- dividing the pediatric population by age. The FDA classification[1] for infants and children is as follows: infant (1 month to 2 years) and children (2 to 12 years).[2] Similarly, Centers for Disease Control and Prevention ("CDC") define "infants" as

---

[1] Guidance for Industry – General Considerations for Pediatric Pharmacokinetic Studies for Drugs and Biological products, Draft Guidance, US FDA, 10 November 1998.
[2]    http://archives.who.int/eml/expcom/children/Items/PositionPaperAgeGroups.pdf (last visited September 23, 2020).

CLASS ACTION COMPLAINT

being "0-1 year of age,"[3] while the American Academy of Pediatrics has a guide titled "Infant Food and Feeding"[4] which identifies infants as being between ages 0 and 12 months.[5] Consumers may reasonably believe that a product that is labeled and marketed for consumption by "infants" is specifically meant to be used by those between the ages of zero months to two years old.

31.   Defendant distributes, markets, and sells the Products in a manner that deceives reasonable consumers into thinking that infants cannot safely take the Children's Products.

32.   Specifically, Target distinguishes the two products by calling one "infants'" and one "children's" in distinctive and yellow lettering:



---

[3]   Child Development–Positive Parenting Tips–Infants (0-1 year) (available at https://www.cdc.gov/ncbddd/childdevelopment/positiveparenting/infants.html)   (last visited Sept. 23, 2020).
[4]   AAP.org, Infant Food and Feeding (available at https://www.aap.org/en-us/advocacy -andpolicy/aap-health-initiatives/HALF-Implementation-Guide/Age-Specific-Content/ Pages/Infant-Food-and-Feeding.aspx) (last visited Sept. 23, 2020).
[5]   *Id.* at "Infant Timeline" (available at https://www.aap.org/en-us/advocacy-and-policy /aaphealth-initiatives/HALF-Implementation-Guide/Age-SpecificContent/Pages/Infant -Timeline.aspx).

CLASS ACTION COMPLAINT

33.     Additionally, at the top right corner of the Infants' Products, Target states "for ages 2 to 3 years," while the top right corner of the Children's Products states, "for ages 2 to 11 years." Through this wording, Target attempts to deceive reasonable consumers into believing that the two Products are different, when Target knows that the active ingredient and dosage is the same.

34.     The top right corner of the Infants' Products' packaging draws a comparison to "Infants' Tylenol® Oral Suspension," while the Children's Products' packaging draws a comparison to "Children's Tylenol® Oral Suspension." Comparing the Infants' and Children's Products to two different Tylenol® products is a further attempt to deceive reasonable consumers into believing that the two Products are different, when Target knows that the active ingredient and dosage is the same.

35.     Also, the product labeling on the Infants' Product is false, deceptive and misleading, because the stated age range of 2-3 years does not match the FDA classification for infants. By marketing this "Infant" product with an age range of 2-3 years, the Infant Products should properly be labeled as "Children's" products, as the FDA classification for children is 2 to 12 years, covering the entire age range of 2-3 years that is on the Infant Products' label.



36.     In the alternative, if the age range of 2-3 years expressed on the Infants' Product is true and accurate, and the Infants' Product is not in fact appropriate for persons age 1 month to 2 years (the FDA classification for "infants"), then it is false, deceptive, and misleading to label the Products as "infants" products.

CLASS ACTION COMPLAINT

37. Defendant further misleads consumers by placing "Ages 2-3" on the Infants' Products. Despite the inclusion of an age range, reasonable consumers believe that a product specifically labeled "infants" is just that, for infants. And no reasonable consumer (as confirmed by most generous FDA age classification, which confirms an infant is ages 1 month to 2 years) would believe that an "infant" is a 2 or 3 year old.

38. Target knows that consumers, such as Plaintiff, are particularly more cautious about what medicine they give to infants. Indeed, parenting resources express the conventional understanding that infants *cannot* tolerate medicines meant for older children. For example, the popular parenting website "What to Expect" warns "Always use the infant formulations; never give your baby a medication intended for older kids or adults."[6] This conventional understanding holds particularly true for parents and caregivers when they are giving their infant a medicine that has caused accidental deaths in the past.

39. Furthermore, despite the fact that the Products contain the same exact amount of acetaminophen in the same dosage amounts, Target markets and sells Infants' Products to consumers, such as Plaintiff, at a substantially higher cost than the Children's Products. In stores, Infants' Products costs approximately three times as much per ounce over Children's Products for the same amount of medicine.

40. No reasonable consumer would be willing to pay more money—and certainly not three times as much per ounce—for Infants' Products unless he or she had good reason to believe that Infants' Products were different than Children's Products.

41. Indeed, Target's misrepresentations and omissions, as described above, would be important to a reasonable consumer in deciding whether to purchase Infants' Products.

---

[6] Colleen de Bellefonds, "Children's Medication Safety Tips and Guidelines." What to Expect (Jan. 22, 2019) (available at https://www.whattoexpect.com/family/childrens-health-andsafety/medication-safety-guidelines-tips#:~:text=Always%20use%20the%20infant%20formulations,baby%20in%20a%20sitting%20position.) (last visited Sept. 23, 2020).

**RULE 9(b) ALLEGATIONS**

42.    Target made material misrepresentations and failed to adequately disclose that the Products are the same. Except as identified herein, Plaintiff and Class members are unaware, and therefore, unable to identify, the true names and identities of those individuals at Target who are responsible for such material misrepresentations and omissions.

43.    Target made material misrepresentations regarding Infants' Products. Specifically, Target marketed, labeled and sold Infants' Products in a manner to indicate to reasonable consumers that they are superior or somehow more appropriate for infants than Children's Products to justify charging the inflated price of Infants' Products. These representations were false and misleading because Infants' Products are the same as Children's Products.

44.    Target's advertising, in-store labeling, marketing, and placement of the Products contained the material misrepresentations, omissions, and non-disclosures continuously at every point of purchase and consumption throughout the Class Period.

45.    Target made numerous misrepresentations on the advertising, in-store labeling, and marketing of Infants' Products that were designed to, and, in fact, did, mislead Plaintiff and Class members into purchasing Infants' Products.

46.    Target made these material misrepresentations, omissions, and non-disclosures for the express purpose of inducing Plaintiff and other reasonable consumers to purchase or otherwise pay a price premium for Infants' Products based on the belief that Infants' Products were specifically designed for infants and different from the identical Children's Products. Target profited by selling Infants' Products to thousands of unsuspecting consumers.

**CLASS ACTION ALLEGATIONS**

47.    Plaintiff brings this action individually and as representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23, on behalf of the below-defined Class:

**Nationwide Class: All persons within the United States who purchased the Infants' Product for personal consumption from the beginning of any applicable limitations period through the date of class certification (the "National Class" or the "Class").**

48.     Additionally, Plaintiff brings this action on behalf of herself and the members of the following California Subclass:

**California Subclass: All persons in California who purchased the Infants' Product for personal consumption from the beginning of any applicable limitations period through the date of class certification (the "California Sub-Class").**

49.     Specifically excluded from these definitions are: (1) any and all persons who purchased the Products directly from Defendant; (2) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (3) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (4) Class Counsel.

50.     As used herein, "Class Members" shall mean and refer to the members of the Nationwide Class and all Subclasses, including Plaintiff.

51.     <u>Numerosity</u>: Although the exact number of Class Members is uncertain at this time and can only be ascertained through discovery, the number is great enough such that joinder is impracticable and likely in excess of 150,000. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

52.     <u>Typicality</u>: The claims of the representative Plaintiff are typical in that Plaintiff, like all Class Members, purchased the Products that were manufactured and distributed by Defendant. Plaintiff, like all Class Members, has been damaged by Defendant's misconduct in that, *inter alia*, they have incurred or will continue to incur damage as a result of overpaying for a product that contained a significantly lesser amount of hemp extract than advertised. Furthermore, the factual basis of Defendant's misconduct is common to all Class Members because Defendant has engaged in a

systematic fraudulent behavior, that was deliberate, includes negligent misconduct, and results in the same injury to all Class Members.

53.     Commonality: Plaintiff has numerous questions of law and fact common to herself and Class Members that predominate over any individualized questions. These common legal and factual issues include:

54.     Whether Infants' Products and Children's Products are the same;

55.     Whether Target knew or should have known that Infants' Products and Children's Products are the same;

56.     Whether Target's conduct and/or omissions in its marketing, labeling and selling the Infants' product in the manner discussed herein indicated to the members of the Classes that Infants' Products were superior or somehow more appropriate for infants than Children's Products;

57.     Whether Target's misrepresentations and omissions were material to reasonable consumers;

58.     Whether Target's labeling, marketing, and the sale of Infants' Products constitute false advertising;

59.     Whether Target's conduct injured Plaintiff and the Classes and, if so, the extent of the damages; and

60.     The appropriate remedies for Target's conduct.

61.     Adequate Representation: Plaintiff will fairly and adequately protect the interests of Class Members. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

62.     Predominance and Superiority: Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and

would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

63.   Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class appropriate.

## **COUNT 1**

### **RESTITUTION**

### **(On Behalf of The Nationwide Class)**

64.   Plaintiff brings this count on behalf of themselves, the Nationwide Class and the California Class (the "Classes") and repeats and re-alleges ¶¶ 1–63, as if fully included herein.

65.   Plaintiff conferred benefits on Defendant by purchasing the Infants' Products at a premium price.

66.   Defendant has knowledge of such benefits.

67.   Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchases of the Infants' Products because the Defendant will obtain the benefits conferred by Plaintiff and the Class Members without adequately compensating Plaintiff and the Class Members. Defendant failed to adequately compensate the Plaintiff for the benefits conferred by purchasing the Infants' Products without those products having the characteristics and benefits promised.

68.   Retention of those moneys under these circumstances is unjust and

inequitable because: (a) Defendant falsely and misleadingly represented the nature of the Infants' Products; (b) Plaintiff paid a price premium for the Infants' Products based on Defendant's false and misleading statements; and (c) the Products did not have the characteristics and benefits promised.

69.     This has resulted in injuries to Plaintiff and members of the Class because they would not have purchased (or paid a price premium) for the Infants' Products had they known the true facts.

70.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Class is unjust and inequitable, and because equity and good conscience requires restitution, Defendant must pay restitution to Plaintiff and members of the Class for its unjust enrichment, as ordered by the Court.

## <u>COUNT 2</u>

**VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, Cal. Civ. Code §§ 1750, *et seq.***

**(On behalf of the California Subclass)**

71.     Plaintiff identified above, individually and on behalf of the California Subclass, repeats and re-alleges ¶¶ 1–63, as if fully alleged herein.

72.     The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), is a comprehensive statutory scheme that is to be liberally construed to protect consumers against unfair and deceptive business practices in connection with the conduct of businesses providing goods, property or services to consumers primarily for personal, family, or household use.

73.     Defendant is a "person" as defined by Cal. Civ. Code §§ 1761(c) & 1770 and has provided "services" as defined by Cal. Civ. Code §§ 1761(b) & 1770.

74.     Plaintiff and California Subclass members are "consumers" as defined by Cal. Civ. Code §§ 1761(d) & 1770 and have engaged in a "transaction" as defined by Cal. Civ. Code §§ 1761(e) & 1770.

75.     Defendant's unlawful conduct resulted in the sales of products and services

to Plaintiff and the California Subclass Members in violation of Cal. Civ. Code § 1770, including:

    a.    Representing that goods or services have characteristics that they do not have;

    b.    Representing that goods or services are of a particular standard, quality, or grade when they were not;

    c.    Advertising goods or services with intent not to sell them as advertised; and

    d.    Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

76.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

77.    Had Defendant disclosed to Plaintiff and California Subclass Members that they misrepresented Defendant's Infants' Products, omitted material information regarding the true abilities of the Infants' Products, and were otherwise engaged in common business practices that ultimately hurt consumers, Defendant would have been unable to continue selling the Infants' Products. Instead, Defendant represented that Infants' Products are specifically formulated for infants without disclosing they are the same as the Children's Products. Plaintiff and the California Subclass Members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered with reasonable diligence.

78.    As a direct and proximate result of Defendant's violations of Cal. Civ. Code § 1770, Plaintiff and California Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendant's Infants' Products, and increased time and expense in treating the damage caused by the use of Defendant's Infants' Products.

79.    Pursuant to § 1782(a) of the CLRA, on October 6, 2020, Plaintiffs' counsel

CLASS ACTION COMPLAINT

notified Defendant in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act.

80.     If Defendant fails to respond to Plaintiffs' letter, fails to agree to rectify the problems associated with the actions detailed above, or fails to give notice to all affected consumers within 30 days of the date of written notice, as proscribed by Section 1782, Plaintiff will move to amend their Complaint to pursue claims for actual, punitive, and statutory damages, as appropriate against Defendant. As to this cause of action, at this time, Plaintiff seeks only injunctive relief.

## COUNT 3
### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW,
### Cal. Bus. & Prof. Code § 17200 *et seq.*
### (On behalf of the California Subclass)

81.     The California Plaintiff identified above, individually and on behalf of the California Subclass, repeats and re-alleges ¶¶ 1–63, as if fully alleged herein.

82.     Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

83.     Defendant violated Cal. Bus. & Prof. Code § 17200 *et seq.* (Unfair Competition Law or "UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

84.     Defendant's "unfair" acts and practices include:

a.     Knowingly designing, developing, manufacturing, advertising, and selling Defendant's Infants' Products with false health claims and significant defects such that consumers did not receive the benefit of their bargain;

b.     Marketing and selling Defendant's Infants' Products that relied upon false health claims solely to increase profits;

c.     Making affirmative public representations about alleged benefits of Defendant's Infants' Products while, at the same time, not ensuring consumer health

and safety with respect to use of the Products; and

d.     Concealing material information from consumers regarding the true nature of the defects in Defendant's Infants' Products in order to impact consumer purchasing behavior.

85.    Defendant has engaged in "unlawful" business practices by violating multiple laws, including the CLRA, Cal. Civ. Code § 1780, *et seq.*, and California common law.

86.    Defendant's deceptive acts and practices include:

a.     Knowingly designing, developing, manufacturing, advertising, and selling Defendant's Infants' Products with false health claims and significant defects such that consumers did not receive the benefit of their bargain;

b.     Marketing and selling Defendant's Infants' Products that relied upon false health claims solely to increase profits;

c.     Making affirmative public representations about alleged benefits of Defendant's Infants' Products while, at the same time, not ensuring consumer health and safety with respect to use of the Products; and

d.     Concealing material information from consumers regarding the true nature of the defects in Defendant's Infants' Products in order to impact consumer purchasing behavior.

87.    Defendant violated UCL's prohibition against engaging in unlawful acts and practices by engaging in false and misleading advertising and by omitting material facts from purchasers of Defendant's Infants' Products. As alleged more fully herein, Defendant's marketing and sale of Defendant's Infants' Products, and more specifically their failure to inform customers of the true nature of Defendant's Infants' Products, violated Cal. Civ. Code § 1750, *et seq.*, common law, and other statutory violations as alleged herein. Plaintiff reserves the right to allege other violations of the law, which constitute other unlawful business acts and practices. As alleged herein, Defendant continues to misrepresent the Products' abilities and continues to deny that the Infants'

1   Products fail to perform as promised, Defendant has not recalled the Infants' Products
2   nor provided any remedial efforts, and Defendant's conduct is ongoing and continues
3   to this date.

4          88.    Defendant violated the UCL's prohibition against unfair conduct by failing
5   to inform its customers about Defendant's Infants' Products' abilities and their true
6   nature; engaging in a pattern or practice of concealing those facts and continuing to sell
7   the Infants' Products despite its knowledge that they are misrepresented - thereby
8   depriving customers of the value of Defendant's Infants' Products as represented. This
9   conduct is substantially injurious to consumers, offends public policy, is immoral,
10  unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any
11  alleged benefit. Defendant engaged in this conduct at the expense of its customers'
12  rights when other, lawful alternatives were available (such as providing customers with
13  full information about Defendant's Infants' Products prior to purchase).

14         89.    Defendant engaged in this conduct to gain an unfair commercial advantage
15  over its competitors, seeking to avoid public knowledge of the abilities of Defendant's
16  Infants' Products and their defects to avoid damage to their sales or reputation.
17  Defendant withheld critical and material information from Plaintiff and California
18  Subclass Members, competitors, and the marketplace, all to Defendant's unfair
19  competitive advantage.

20         90.    Defendant's business practices, as alleged herein, constitute fraudulent
21  conduct because they were likely to deceive, and did deceive, California Subclass
22  Members into purchasing Defendant's Infants' Products when those Products were
23  misrepresented and otherwise did not perform as advertised.

24         91.    Defendant's representations and omissions were material because they
25  were likely to deceive reasonable consumers.

26         92.    As a direct and proximate result of Defendant's unfair, unlawful, and
27  fraudulent acts and practices, Plaintiff and California Subclass Members were injured
28  and lost money or property, including from not receiving the benefit of their bargain in

purchasing Defendant's Infants' Products, and increased time and expense in dealing with treating damages from the use of Defendant's Infants' Products.

93.    Defendant recklessly disregarded Plaintiff and California Subclass members' rights. Defendant's knowledge of the Infants' Products' false claims put it on notice that the Infants' Products were not as Defendant advertised.

94.    Plaintiff and California Subclass Members seek injunctive and declaratory relief, any other appropriate equitable relief, and an award of reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

**COUNT 4**

**VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW**

**Cal. Bus. & Prof. Code § 17500** *et seq***.**

**(On behalf of the California Subclass)**

95.    The Plaintiff identified above, individually and on behalf of the California Subclass, repeats and re-alleges ¶¶ 1–63, as if fully alleged herein.

96.    Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive Class Members and the public. As described, Defendant misrepresented Defendant's Infants' Products, concealed Defendant's Infants' Products' defects, and also concealed and misrepresented the true nature of Defendant's Infants' Products.

97.    By its actions, Defendant disseminated uniform advertising regarding the Defendant's Infants' Products throughout the country, including in California. The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500 *et seq*. (False Advertising Law or "FAL"). Such advertisements were intended to and likely did deceive the consuming public for the reasons detailed herein.

98.    The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive in that Defendant

20

1  failed to disclose the true nature of Defendant's Infants' Products. Defendant failed to
2  instigate a public information campaign to alert consumers of the defects and, instead,
3  continued to misrepresent the true nature of Defendant's Infants' Products, continuing
4  to deceive consumers.

5      99.   Defendant continued to misrepresent to consumers that Defendant's
6  Infants' Products were capable of certain benefits without disclosing they are not. Had
7  Defendant disclosed those issues, rather than falsely advertising Defendant's Infants'
8  Products' abilities, consumers would have not purchased Defendant's Infants' Products,
9  and would not pay an inflated price for Defendant's Infants' Products.

10      100.   In making and disseminating the statements alleged herein, Defendant
11  knew, or should have known, its representations, advertisements, and statements were
12  untrue and misleading in violation of California law. Plaintiff and other California
13  Subclass Members based their purchasing decisions on Defendant's omitted material
14  facts. The revenues to Defendant attributable to Infants' Products sold in those false and
15  misleading advertisements amount to hundreds of millions of dollars. Plaintiff and
16  California Subclass Members were injured in fact and lost money and property as a
17  result.

18      101.   The misrepresentations and non-disclosures by Defendant of the material
19  facts described and detailed herein constitute false and misleading advertising and,
20  therefore, constitute violations of FAL.

21      102.   As a result of Defendant's wrongful conduct, Plaintiff and the California
22  Subclass Members lost money. Plaintiff and the California Subclass Members are
23  therefore entitled to restitution as appropriate for this cause of action.

24      103.   Plaintiff and California Subclass Members seek all monetary and non-
25  monetary relief allowed by law, including restitution of all profits stemming from
26  Defendant's unfair, unlawful, and fraudulent business practices; injunctive and
27  declaratory relief; reasonable attorneys' fees and costs under California Code of Civil
28  Procedure § 1021.5; and other appropriate equitable relief.

## RELIEF DEMANDED

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against Defendant, as follows:

A. An order certifying the class and designating Plaintiff as the Class Representative and her counsel as Class Counsel;

B. Awarding restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of its unlawful, unfair, and fraudulent business practices described herein;

C. Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its misconduct and pay them all money they are required to pay;

D. Order Defendant to engage in a corrective advertising campaign;

E. Awarding attorneys' fees and costs; and

F. For such other and further relief as the Court may deem necessary or appropriate.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

Dated: October 13, 2020                    Respectfully submitted,

/s/ *Christopher L. Rudd*

**THE RUDD LAW FIRM**
Christopher L. Rudd (SBN 130713)
E-mail: clrudd@ruddlawpc.com
4650 Sepulveda Boulevard, Suite 205
Sherman Oaks, CA 91403
Tel.: 310.663.0705
Fax: 310.359.0258

22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MASON LIETZ & KLINGER LLP**
Danielle L. Perry (SBN 292120)
Gary E. Mason*
David K. Lietz*
5101 Wisconsin Avenue NW, Suite 305
Washington, DC 20016
Tel.: (202) 429-2290
Fax: (202) 429-2294
gmason@masonllp.com
dperry@masonllp.com
dlietz@masonllp.com

**MASON LIETZ & KLINGER LLP**
Gary M. Klinger*
227 W. Monroe Street, Ste. 2100
Chicago, Illinois 60606
Phone: 202.640.1160
Fax: 202.429.2294
gklinger@masonllp.com

*pro hac vice to be filed*

*Attorneys for Plaintiff and the Proposed Classes*

23